**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ARGONAUT INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **LYNCHBURG STEEL & SPECIALTY** ) | |
| **COMPANY,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ANDERSON ENTERPRISES, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DOUGLAS B. ANDERSON,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **GERALDINE K. ANDERSON,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## COMPLAINT

COMES NOW, Plaintiff Argonaut Insurance Company ("Plaintiff" or "Argonaut"), by its undersigned counsel, and for its Complaint against Defendants Lynchburg Steel & Specialty Company, Anderson Enterprises, Douglas B. Anderson and Geraldine K. Anderson ("Defendants" or the "Indemnitors") alleges and avers as follows:

### Nature of Action

1.    This is an action for indemnity for all of Argonaut's losses, including its legal fees and expenses, sustained in connection with Argonaut's furnishing and execution of certain surety bonds on behalf of the Defendants, in accordance with the Defendants' express obligations under

a general indemnity agreement that they each executed on Argonaut's behalf, as consideration for Argonaut's issuance of such bonds.

## Parties

2.      Plaintiff Argonaut Insurance Company is an Illinois corporation, with its principal place of business in San Antonio, Texas, and is duly licensed to issue surety bonds in the District of Columbia.

3.      Upon information and belief, Defendant Lynchburg Steel & Specialty Company ("Lynchburg Steel") is a Virginia corporation with its principal place of business in Lynchburg, Virginia.

4.      Upon information and belief, Defendant Anderson Enterprises, LLC ("Anderson Enterprises") is a limited liability company, formed in the Commonwealth of Virginia, with its principal place of business in Madison Heights, Virginia.

5.      Defendant Doug B. Anderson ("Mr. Anderson") is an individual who, upon information and belief, resides in the Commonwealth of Virginia.

6.      Defendant Geraldine K. Anderson ("Ms. Anderson") is an individual who, upon information and belief, resides in the Commonwealth of Virginia.

## Jurisdiction and Venue

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship between Plaintiff and the Defendants, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this District under 28 U.S.C. § 1391 in that, *inter alia*, a substantial portion of the losses for which Argonaut seeks indemnity were incurred in connection

with a surety bond issued in furtherance of a construction contract for work performed on a project located in the District of Columbia.

**Factual Background**

**A.     The General Indemnity Agreement**

9.     On or about November 15, 2010, Defendants Lynchburg Steel, Anderson Enterprises, Mr. Anderson and Ms. Anderson, as "Indemnitors," executed and entered a General Indemnity Agreement (the "Indemnity Agreement") for the benefit of [Argonaut], as "Surety," for the purpose of indemnifying the Surety from any and all Losses incurred or sustained as a result of or in connection with Argonaut's furnishing, execution, renewal, continuation, or substitution of any Bond or Bonds on behalf of the Indemnitors.   A true and correct copy of the Indemnity Agreement is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference as though set forth in full.

10.     The Indemnity Agreement broadly defines the term "Bond(s)," as used in the Indemnity Agreement, to include, *inter alia*:

> any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any other contractual obligations previously or hereafter executed, issued, procured or undertaken by the Surety…*on behalf Indemnitors*, whether issued prior to or subsequent to the effective date of this [Indemnity] Agreement.

Indemnity Agreement Ex. A at "Definitions" section (emphasis added).

11.     The Indemnity Agreement broadly defines the term "Indemnitors," as used in the Indemnity Agreement, to include, *inter alia*, any individual or legal entity that, itself or by an authorized representative, signed the Indemnity Agreement.   Indemnity Agreement Ex. A at "Definitions" section.

12.     The Indemnity Agreement broadly defines the term "Losses," as used in the Indemnity Agreement, to include, *inter alia*,

3

> any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this [Indemnity] Agreement, including, but not limited to interest, legal fees and expenses….

Indemnity Agreement Ex. A at "Definitions" section.

13.     The Indemnity Agreement provides, in part, that "as an inducement to the Surety in consideration of the Surety's execution or procurement of the Bond(s),…the Indemnitors hereby agree…jointly and severally as follows," after which the Indemnity Agreement, in numbered paragraphs, sets forth the terms governing each Indemnitor's obligations to Argonaut. Indemnity Agreement Ex. A.

14.     Paragraph 2 of the Indemnity Agreement, entitled "Indemnity," obligates each Indemnitor, *inter alia*:

> To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other reasonable expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s).

Indemnity Agreement Ex. A.

15.     Paragraph 2 of the Indemnity Agreement, entitled "Indemnity," broadly defines the expenses covered thereby to include, but not to be limited by:

> (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this [Indemnity] Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this [Indemnity] Agreement against any of the Indemnitors.

Indemnity Agreement Ex. A.

16.     Paragraph 2 of the Indemnity Agreement, entitled "Indemnity," further provides:

> Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand.  Vouchers, affidavits, or other evidence of payment by the Surety shall be prima facie evidence of the Indemnitors' liability for such Losses or other expenses.

Indemnity Agreement Ex. A.

17.     Paragraph 9 of the Indemnity Agreement, entitled "Default," provides that "[t]he

Indemnitors shall be in default of this Agreement if," *inter alia* "…(d) Indemnitors breach any

other provision of this Agreement."

Indemnity Agreement Ex. A.

18.     Paragraph 10 of the Indemnity Agreement, entitled "Indemnitors representations,"

provides, in part:

> The Indemnitors represent and warrant to the Surety that they have a substantial, material, and or beneficial interest in the obtaining of Bond(s) by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors have applied or will apply to the Surety for Bond(s) pursuant to this [Indemnity] Agreement.

Indemnity Agreement Ex. A.

19.     Paragraph 27 of the Indemnity Agreement, which is untitled, provides:

> EACH OF THE INDEMNITORS REPRESENT TO THE SURETY THAT SUCH INDEMNITORS HAVE CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.  IN TESTIMONY HEREOF WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.  THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE INDEMNITORS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

Indemnity Agreement Ex. A.

**B.      Argonaut Issued Bonds on the Indemnitors' Behalf In Reliance upon the Indemnity Agreement**

20.      On or about July 9, 2015, Argonaut, as "Surety," executed and issued a Performance Bond and a Payment Bond, both numbered SUR0030547, naming Lynchburg Steel & Specialty Company as "Contractor" and MCN Build, LLC as "Owner," in connection with a "Construction Contract" dated December 9, 2014, for construction of a project known as "MCN Job No. 01-014012-00; Rocketship DC Washington DC," (the "Project")  True and correct copies of these Performance and Payment Bonds, executed by the Surety, are attached hereto as Exhibit B (the "Bonds").

21.      Argonaut furnished and executed the Bonds: (i) on the request and application of the Indemnitors; (ii) on each Indemnitor's behalf; and (iii) in reliance upon the terms, protections and promises afforded to Argonaut by the Indemnitors under the Indemnity Agreement, which Argonaut received from the Indemnitors.

**C.      The Bond Claim**

22.      By letter dated June 6, 2017, Williams Steel Erection Co., Inc. ("Williams Steel"), a subcontractor to Lynchburg Steel in connection with the Project, asserted a claim against the above-referenced Payment Bond, demanding payment from Argonaut in the amount of $82,248.00, for labor and materials that Williams Steel allegedly supplied under the above-referenced Construction Contract, but for which Williams Steel had allegedly not been paid by Lynchburg Steel (the "Bond Claim").

23.      Upon receipt of the Bond Claim, Argonaut contacted Lynchburg Steel and Mr. Anderson, inquiring as to the status of Lynchburg Steel's account with Williams Steel and as to the propriety of the Bond Claim and demanding to be indemnified, held harmless and exonerated from related Losses in accordance with the Indemnity Agreement.

24.     In response, Lynchburg Steel and Mr. Anderson advised Argonaut that it was unable to pay Williams Steel for its work, citing cash flow problems, but indicating that Lynchburg Steel would have paid Williams Steel in full if it had sufficient funds.

25.     On June 8, 2017, having confirmed with Lynchburg Steel that there was no dispute between Lynchburg Steel and Williams Steel regarding the amount due and owing to Williams Steel, Argonaut paid Williams Steel the full, undisputed amount of its Bond Claim, specifically $82,248.00.

26.     That same day, Argonaut again wrote to Lynchburg Steel, memorializing Argonaut's full payment of the Bond Claim and proposing a payment plan for reimbursement, conditioned upon the Indemnitors' immediate execution of a promissory note, among other terms and conditions.  Under Argonaut's proposal, the amount of Argonaut's related Losses, including legal fees and costs potentially required to enforce its indemnity rights, would be mitigated and the Indemnitors would be permitted to reimburse Argonaut for its Bond Claim Losses and discharge their corresponding obligations to Argonaut under the Indemnity Agreement over a six-month duration.

27.     On June 12, 2017, Lynchburg Steel and Mr. Anderson wrote to Argonaut advising that the terms of the proposed payment plan were acceptable.

28.     Notwithstanding, and despite additional follow up correspondence, upon information and belief none of the Indemnitors executed the proposed promissory note.

29.     Argonaut has satisfied any all conditions necessary to enforce the Indemnity Agreement against the Indemnitors.

**BREACH OF INDEMNITY AGREEMENT**

30.     Argonaut incorporates by reference, as if fully restated herein, the allegations contained in the foregoing paragraphs 1 through 29 of this Complaint.

31.     The Indemnity Agreement constitutes a valid and enforceable written agreement between Argonaut and each of the Indemnitors, pursuant to which each Indemnitor is obligated to indemnify, protect, hold harmless and exonerate Argonaut from all loss and expense in connection with any Bonds issued by Argonaut on behalf of the Indemnitors.

32.     Each of the Indemnitors breached its express and implied duties, and is in default under, the Indemnity Agreement for, among other things, (i) failing to indemnify, protect, hold harmless and exonerate Argonaut from all Losses, including all those related to the Bond Claim and all those incurred in enforcing the terms of the Indemnity Agreement, which, in turn, includes, but is not limited to legal fees and costs incurred in connection with this lawsuit.

33.     As a direct and proximate result of the Indemnitors' breaches of the Indemnity Agreement, Argonaut has sustained damages, principally in the way of unreimbursed Losses, including not only from its payment of the Bond Claim amount of $82,248.00, but also Losses from, *inter alia*, interest and attorneys' fees and other legal expense incurred in connection with this lawsuit, which continue to accrue, for all of which the Indemnitors are jointly and severally liable.

WHEREFORE, judgment should be rendered in Argonaut's favor and against each of the Indemnitors, jointly and severally, in the full amount of Argonaut's total Losses, including interest and all attorney's fees and other legal costs and expense incurred in connection with this lawsuit, in accordance with Argonaut's proof submitted in this action.

Date: September 6, 2017                     Respectfully Submitted,


   /s/  Vivian Katsantonis             
Vivian Katsantonis (D.C. Bar No. 432293)
Christopher M. Harris (D.C. Bar No. 996672)
WATT, TIEDER, HOFFAR &
FITZGERALD, L.L.P.
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
vkatsantonis@watttieder.com
charris@watttieder.com